■ In the Matter of ROSARIO ALESSI, Individually and as Administrator of the Estate of RANDY J. ALESSI, Deceased, Appellant, v COUNTY OF NASSAU et al., Respondents. — In a proceeding pursuant to subdivision 5 of section 50-e of the General Municipal Law for leave to serve a late notice of claim, the claimant appeals (1) from an order of the Supreme Court, Nassau County (Levitt, J.), dated April 4, 1980, which denied the application, (2) from a second order of the same court, dated June 12, 1980, which purportedly denied the claimant's motion for renewal and reargument, and (3) as limited by the claimant's brief, from so much of a third order of the same court, dated August 13, 1980, as purportedly denied his subsequent motion for renewal and

reargument. (We deem the court to have actually granted the motions for renewal and reargument and to have adhered to the original determination.) Appeals from the orders dated April 4, 1980 and June 12, 1980 dismissed as academic, without costs or disbursements. Those orders were superseded by the order dated August 13, 1980. Order dated August 13, 1980 reversed insofar as appealed from, on the law, without costs or disbursements, orders dated April 4, 1980 and June 12, 1980 vacated and application for leave to serve a late notice of claim *nunc pro tunc* granted. The claimant, as administrator of his son's estate and individually, alleged that his son, suffering from a heart condition, was transported by helicopter to the respondent county medical center on April 26, 1979, where he underwent surgery nearly four hours later and died about two hours thereafter. The claimant made this application to serve a late notice of claim almost seven months after expiration of the statutory 90-day period within which such notice is supposed to be served (General Municipal Law, § 50-e, subd 1). The only supporting paper submitted was his attorney's affirmation, which, like the proposed notice of claim, apprised Special Term only of the alleged fact that the youth was the victim of negligence in the performance of an angiogram and cardio-pulmonary bypass that resulted in cardiac arrest. The attorney argued that the court should exercise its discretion under the statute (General Municipal Law, § 50-e, subd 5) because the youth had died and the medical center had control of the pertinent records. Special Term properly denied the application on the ground that the claimant had failed to explain sufficiently the seven-month delay. The claimant timely moved for leave to renew and reargue. Another affirmation sketched in certain details of the proposed action, including the fact that the youth's transfer to the county medical center had been from a private hospital where he had been under treatment for his heart condition. The affirmation referred to an annexed affidavit by the claimant for an explanation of the seven-month delay, but at no point was an excuse offered for the failure to submit the explanation on the original application. The claimant's affidavit stated that the surgeons had informed him that his son's death was attributable to the delay in transferring him to the facility. He retained an attorney, but the autopsy report was not completed until June 26, 1979, when it was forwarded for review to a medical expert. In turn, the attorney informed the claimant that the expert's conclusion was that there had been no malpractice. Not knowing what to do, the claimant contacted his present counsel who, on review of the file, advised him that malpractice had occurred in both hospital facilities in the form of delayed treatment. The claimant's original attorney, according to present counsel, was little experienced in medical malpractice cases. A Deputy County Attorney, in opposition, stated that the autopsy had been performed the day after the youth's death, but that the cause of death could not be finally determined until receipt of the results from a microscopic examination, which was completed June 9, 1979; the county medical examiner stated that this was not properly characterizable as a delay, although he added that the June 9, 1979 final autopsy report was mailed to the claimant on June 26, 1979, pursuant to his written request of May 1, 1979. Special Term ruled that the claimant had presented no new facts to warrant the relief sought, having again failed to explain the seven-month delay in making the original application in view of his admission to having first contacted an attorney in June, 1979. The court also faulted the claimant's papers for failing to include "any statement by a doctor substantiating said claims." The claimant thereupon made a second motion for leave to renew and reargue, this time submitting only a surgeon's statement as a new fact, along with the attorney's legal argument and comment in an affirmation interpreting the order as "request-[ing]" this information. Special Term again ruled that the claimant had

presented no new facts to warrant relief. As a threshold matter, the county points out that the second and third orders specified that they were denying motions for reargument, and hence these orders are unappealable. Thus the only order under review in this court would be the initial order denying leave to serve a late notice of claim because of the insufficiency of the supporting papers. While we agree, as indicated earlier, that the first order was properly made, we disagree with this characterization of the second and third orders as orders denying reargument or — more pertinently for this case — as orders denying unexcused renewal applications that, in other cases, have been deemed to be reargument motions for purposes of appealability (see *Erlich v Erlich,* 80 AD2d 882). It is true that Special Term ruled that it had not overlooked any legal arguments and that reargument was therefore properly deniable. But on both motions, the claimant had submitted new facts that were at least colorably relevant to the merits of the issue of his right to serve a late notice of claim. Contrary to the purported denial of such leave to *renew,* Special Term's memorandum decisions indicate that it refused the ultimate relief of leave *to serve a late notice,* and did so not because no new facts had been submitted, but because these new facts were legally insufficient to warrant the grant of such *ultimate relief.* Thus, these two orders do not appear to have been denials of renewal applications for the failure to submit an excuse explaining why the purportedly new facts had not been submitted on the original motion (see *Erlich v Erlich, supra*); apparently Special Term considered the new facts in relation to the ultimate issue without regard for the claimant's failure to submit an excuse. In short, the decretal statements of these two orders were incomplete, dealing only with the applications for leave to reargue without expressly disposing of the applications for leave to renew, and thereby requiring this court to infer from the memorandum decisions what disposition Special Term intended. Such confusion can be avoided in the future by Special Term's phrasing the decretal statements to be more consistent with its memorandum decisions. Upon consideration of the merits of the claimant's applications for leave to serve a late notice of claim, we are of the opinion that upon the papers submitted on the first application to renew and reargue Special Term should have granted such leave (see *Matter of Wemett v County of Onondaga,* 64 AD2d 1025; *Dickey v County of Nassau,* 65 AD2d 780). County employees apparently led the claimant to believe his son's death was due to causes other than their negligence, as did his originally retained counsel; however, the claimant did demonstrate reasonable persistence in shortly thereafter retaining new counsel, who took his case. The county fails to demonstrate any significant prejudice to its ability to defend the claim on the merits; hospital records were made and the county medical examiner undertook an investigation of the youth's death hours after his dramatic arrival by helicopter. Therefore, leave to serve a late notice of claim should be granted. Hopkins, J. P., Rabin, Cohalan and O'Connor, JJ., concur.